All right, our sixth case for this morning is Foggey against City of Chicago. And it looks like we're still getting attorneys in. The docket number is 21247. All right, and we have Mr. Mungo and Mr. Collins. So I think I see both of you. I apologize, your honors. I think I got used to being on mute there. Can you all hear me now? I can hear you fine. I don't see you. So if you can get your video going. You got it. You got it. I apologize. We're all dealing with Zoom. Don't worry about it. So you may proceed, Mr. Mungo. My God, yes, yes. Okay, so may it please the court, Leonard Mungo on behalf of the appellant, Vincent Foggey. And I'd like to reserve three minutes for rebuttal. Okay, just watch the clock. When it says three minutes, you stop. Will do. Thank you, your honor. So to begin with, I think it's important. Mr. Mungo, can I, and I'm sorry to interrupt right on the gate, but I want to clarify one thing for purposes of the argument. I don't get the sense from your briefs that you're appealing your gender discrimination claim. Is that correct? This is just about the racial discrimination. Well, yes, we are. And it's not apparent from the, well, you know, the problem goes back to, I'm going to address this this morning, how we were simply prohibited and just not provided any discovery. And we requested it over and over. I didn't see anything in your briefs here that really developed at all or below for that matter, the question of gender discrimination. The focus seems to be on the racial discrimination case, but if you're selling me they're both in, go ahead with your argument, please. Yes. And I'll leave that within the sound discretion of the wisdom of the court in terms of addressing that, your honor. First, it's important to know that Mr. Fogey is a 52 year old African-American male and a combat veteran from Operation Desert Storm. He earned two bronze stars while there. He was employed in 1992 by the city of Chicago in the capacity of a civilian assisting with the Chicago Police Department and processing arrestees. In 2006 is when Mr. Fogey began his career as a sworn police officer. And he served in that capacity for eight years up to the point in time of which this incident, which is the basis for the litigation and the appeal. And I want to make it clear that Mr. Fogey was a, in my opinion, a great employee, a model employee. He received 29 achievement awards for his service over that period of time. Since he'd been employed, he always received performance evaluations that were satisfactory and above. In fact, his last performance evaluation, which spanned the period prior to him being suspended, which covered the period of March of 2013 to March of 2014, he received a exceed expectation. But Mr. Mungo, let me just cut to the chase here. In order to show actionable discrimination, it's often the case, and it seems to be the case here, that you need to show that there were other people similarly situated who were treated better. And I understand you're pointing to Mr. Hodzik, but the district court thought that he really was not similarly situated. He was a relative rookie, whatever you want to make of that preparatory time, but he'd only formally been on the job for a few days. And the powers that be in the Chicago Police Department, who reviewed this video and this incident with Hodzik and the man in the parking lot, thought that this was a very serious failure to perform. So they ended his employment. And I don't see where you show the discrimination. You may think that it was a very harsh response for such a decorated man and somebody, but it's really not up to us to decide what punishments the Chicago Police Department is doing. Our job is to make sure there's no discrimination. So how do you show that there's racial, or for that matter, any other kind of discrimination happening here? Well, as the court is well aware, the district court did agree that he was in a protected class and that there was an adverse action. And the issue, as you pointed out, is whether or not he has a comparable, a legally qualified comparable. And the answer to that question is yes. There has been misrepresentations or maybe misunderstandings as to how Hodzik really matched up and was really an accurate comparable to Officer Fogey. And I think the big issue that's being focused on in terms of Hodzik not being an adequate comparable is his length in service. I think that's the major argument that's being made here. Well, and I would add too that Hodzik was the one who was physically encountering this man who had just punched his wife or whatever, you know, the violent person. He bites Hodzik. So Hodzik is in a much more difficult situation than Fogey, who was in the Walgreens and then who leaves. However fast or slowly he walked, I don't want to get into that. But another difference is the actual situation the two were in. Well, Judge Wood, may I please respond to the comparable issue first? Mr. Hodzik, Officer Hodzik was a sworn police officer for one year and a half. And that's on, you can find that in docket 140-5, page 15 and 18 and 19. He was not on the, he was working in that district for a few days. He has been a sworn police officer for a long time. So both of them were sworn officers. They worked for the same supervisor. They were subject to the same rules and regulations. Hodzik had been a full sworn police officer for that one year and a half. And at the time of this incident, at the time of this incident, he was, and was subject to the same rules and regulations as Fogey. In fact, But they have to be directly comparable in all material respects. And Hodzik was there for, has been a sworn officer for, as you said, for a year and a half. And your client had been on the job for quite some time and was experienced. And even though Hodzik had been a sworn officer for only a year and a half, he only had a few, a very short time of really the full responsibilities. Well, Your Honor, the case law actually requires, or does not require, that there need to be complete identities, just substantial similarity. But they have to be directly comparable. Giving all relevant factors. I'm sorry. They have to be directly comparable. In the relevant respects. I mean, you're right. There could be some things that are sort of neither here nor there that are different. But Coleman, for example, says in the relevant respects, they've got to be in the same situation. Well, if you look at the, the fact that they were both sworn officers that worked for the same supervisor, subject to the same rules, they both violated the same rules. Hodzik wasn't disciplined at all. He wasn't even trained. Even though there was an acknowledgement by his supervisor that he violated the rules. They didn't even look at him. I think that is significant. And I think that is something that is going to be hard to ignore if justice is to be done. I'd like to reserve my one minute. You may reserve the rest. That's fine. Mr. Collins. May it please the court. Mr. Foggy's race discrimination claim fails. Because he cannot show that a similarly situated officer received better treatment. Likewise, his retaliation claim fails because the police board did not know about his complaint to the Equal Employment Opportunity Commission. And moreover, the timing of his discharge was not suspicious. With respect to Mr. Foggy's motion to discharge, unless the court has any questions, we rest on our brief. And finally, as the court noted, Mr. Foggy has failed to develop his sex discrimination claim on appeal and has thereby forfeited that claim. So can I ask that you would stop for a minute on his motion to compel. Ordinarily, what I would expect in a case like this would be some showing that beyond the one incident where all we're looking at is two people, Hodzik and Foggy, or Foggy, you know, how does the police department handle other incidents in which these same rules have been violated? Is Officer Foggy the only person who's ever lost his job over it? You know, do they fire people all the time because of it? You know, what's there? And there seems to have been a problem developing that record. And the city seems to have been, you know, fighting pretty hard to avoid production of information. Well, Your Honor, Mr. Foggy's request in discovery was for information about similarly situated officers. That was how he phrased it. The city objected that that request in those terms was vague. And at that point, it was for Mr. Foggy to engage in discussion, to reach an agreement about what kinds of attributes make officers similarly situated. So like maybe being accused of violating the same rule, for example? Same rule or perhaps engaging in the same kind of misconduct, which here was most prominently failing to assist one's partner. But the fact that this issue is subject to these kinds of different interpretations only underscores that Mr. Foggy at that point, and this is well before discovery had ended, should have engaged in further discussion to reach an agreement about what similarly situated meant for purposes of discovery. And the district court correctly pointed this out and agreed that the city's objections when the city made them were well-founded. Now, if I may, I'd like to discuss the race discrimination claim. Sure. Mr. Foggy relies entirely on a comparison between himself and his former partner, Officer Hudzik, but the differences between the two men are manifest. Officer Hudzik needed Mr. Foggy's help arresting a man who had just violently attacked a woman. Mr. Foggy, however, despite seeing Officer Hudzik struggle on the ground to bring the offender under control, slowly walked over. And then when he eventually reached Officer Hudzik's side, offered inadequate physical assistance to bring the offender under control. Can I ask you, I take it when you say slowly walked over, there's some back and forth in the briefs about this, but there was video footage from the Walgreens that would allow somebody kind of in a Scott versus Harris sense to evaluate the speed of the response. Yes, there is. The record includes video from the Walgreens parking lot, which depicts Officer Foggy exiting the Walgreens. And as he leaves the Walgreens, he can see directly in front of him, Officer Hudzik, his partner, is struggling on the ground with this offender. And despite seeing that, does not pick up his pace at all and continues to walk, showing no urgency in that situation. So and then when Mr. Foggy eventually reached Officer Hudzik's side, as the police board pointed out, he failed to use certain control tactics that could have helped Officer Hudzik in that situation. Now, Mr. Foggy says that his former partner also committed misconduct that evening, but Officer Hudzik's alleged shortcomings pale in comparison to what Mr. Foggy did. Now, those shortcomings, he didn't say in the dispatch, you know, in his communication, I gather, what the point of calling for backup was. It wasn't detailed enough. Is that right? That's that's correct, Your Honor. That's Mr. Foggy's allegation. However, sending an incomplete radio transmission is not comparable to failing to assist one's partner in a time of need. And although Mr. Foggy now says that Officer Hudzik violated the same police rules that he did, or that Officer Hudzik could have been fired for sending an incomplete radio call. And does that argument go to the similarly situated prong or to the pretext prong or both? It could, in a case such as this, Your Honor, where the plaintiff's claim is that he was unfairly targeted for discipline, this kind of comparator evidence could go to both similarly situated and pretext. But since the conduct in question was not comparable, this evidence is not useful to Mr. Foggy on either score. Mr. Foggy also faults Officer Hudzik for not using certain control techniques on the offender that evening. But here, too, any comparison between the men breaks down. Officer Hudzik, in fact, brought the offender under control and put him in handcuffs. Despite being bit in the process, which would require him to go to the hospital later that evening. Whereas with Mr. Foggy, as the police board correctly explained, he could have used certain control techniques to help his partner in that situation, but he failed to do so. What would you expect Foggy to do when he saw from some distance this, well, at least the way I see it, he first puts him up against the wall, then they're on the ground kind of wrestling. Should he have immediately run to the scene? Should he have tried to help subdue the person? What should he have done that he didn't do? All of the above, Your Honor. When he saw Officer Hudzik have to perform the emergency takedown on the offender and then when he saw the ensuing struggle on the ground, Mr. Foggy should have ran to help his partner in that moment. And then once he reached Officer Hudzik's side, he should have used certain techniques that he was trained to use. And the police board pointed out in its decision that he utterly failed to use those techniques that he was trained to use. Did he have any past record of some kind of, the same kind of attitude? Or is this the first time incident as far as Foggy is concerned? As far as I know, Your Honor, this is the first instance where Mr. Foggy failed to assist his partner. Which is why I keep wondering precisely whether the police department regularly fires people who commit the failure to assist offense under the rules or whether this is something that happened only to Officer Foggy. Well, Your Honor, if Mr. Foggy wanted to challenge the police board's decision, he could have pursued such a claim in state court under administrative review from the police board's decision, but he decided not to pursue that claim. And instead, he's pursuing this discrimination claim instead. But to prevail on that claim, he would need to have evidence that similarly situated officers engaged in similar conduct, but received a lesser punishment. And he just doesn't have that evidence. Yeah, and that's where we have this problem with the record, basically. Whether it's there or not, we don't know, but it's certainly not in this record. That's correct, Your Honor. Okay. And if I may just briefly talk about the retaliation claim. To begin to prevail on this claim, Mr. Foggy would need to show that the police board as the decision maker in this case knew about Mr. Foggy's complaint to the Equal Employment Opportunity Commission. But notice of that charge went to the city's corporation council and not the police board. Moreover, the corporation council did not represent the board in Mr. Foggy's termination proceeding. Rather, the corporation council represented the superintendent before the board. So absent evidence that the police board actually knew about the EEOC charge, the retaliation claim fails. Moreover, Mr. Foggy relies on the timing of his discharge in relation to when he filed his EEOC charge. But that timing was not suspicious. By the time Mr. Foggy filed his charge, the police board had already heard his case. And then between when Mr. Foggy filed the charge and when the police board decided to fire him, almost three months had passed. And that amount of time is far too long to support an inference of retaliation. And I see my time is almost up. If there are no further questions, the judgment of the district court should be affirmed. All right, thank you. Anything further, Mr. Mungo? You have to take mute off. Okay, thanks for not running my clock. I appreciate that. First of all, corporation council for the city of Chicago does represent the police board. They are the lawyers for the police board. Then it's impossible for them to have responded to the charge without speaking with the police board because this complaint was filed after the hearing, number one. Number two, the issue regarding whether or not Hatzik was a good comparable. Your honors, I believe that we will be establishing not a good president to put an officer who was a year and a half on the force being unequal when he's in terms of not being a good comparator, when he is comparable on all four on everything else. I just think it's a dangerous, particularly in our environment in this country today. Secondly, discovery. We didn't depose his supervisor until about three or four months after discovery. No, five months after discovery closed. And that's a key witness. And we couldn't get the discovery to determine whether or not there are other comparables that would be more on all four than Mr. Hatzik. We were completely shut down. We were shut down. Now, how can you... I'm sorry. You're gonna have to wrap up, Mr. Mungo. Your time's up. Yeah, well, the point is... One concluding thought. Thank you, your honor. The point is, if we cannot get our discovery and the judge gave us an order at the last status conference to go back and confer to wake up, to narrow this down, we still couldn't work it out. And then the judge in the meantime, issues an order denying our motion to compel. He set the hearing... That will do, Mr. Mungo. Okay. Thank you very much. Thanks to both counsel. And we would ask that the court remand this, even if not on the issue of Hatzik being a comparable, the fact that we should be able to get our discovery. All right, case is taken under advisement.